No. 8156.

THE STATE OF LOUISIANA, EX REL. EMILE ECUYER, vs. E. A. BURKE, STATE TREASURER.

In a suit to compel the Treasurer of the State by Mandamus to stamp six bonds of the State of Louisiana, for $1000 each, reducing the interest thereon, under the provisions of the Ordinance of the Constitutional Convention of 1879, this Court has jurisdiction, because the amount in dispute is the interest on $6000, at the rate of two per cent per annum for five years, three per cent for fifteen years, and four per cent thereafter until the year 1914, making an aggregate sum of $6660.

Act No 121 of 1880, Sec. 6, providing that " * * * no bond shall be stamped until the said January coupon shall have been surrendered to the Treasurer or Agent," is violative of

State ex rel. Ecuyer, vs. Burke, State Treasurer.

the Constitutional Ordinance, in imposing additional requirements for the stamping of the bonds, and, to that extent, it is inoperative.

The duty of the Treasurer to stamp said bonds, as required by the Ordinance, is purely ministerial, and he should be compelled by Mandamus to perform it.

A PPEAL from the Civil District Court for the parish of Orleans. Tissot, J.

*D. C. & L. L. Labatt* and *Chs. S. Rice* for the Relator and Appellant:

First—A mandamus will lie to enforce the performance of a mere ministerial duty against the State Treasurer. C. P., Art. —, and 2 Otto, McComb.

Second—The State debt ordinance in the second article is not conditional on the creditor's acquiescence in the third article, and any legislation to produce that result is unconstitutional and void.

Third—The refusal of the Treasurer to stamp the bonds at the reduced interest is based on an unconstitutional statute of the Legislature requiring surrender of the coupon due January 1, 1880, without payment, which effectually violates the Federal Constitution, Art. 1, Sec. 10, by impairing the obligation of a contract.

Fourth—The State judges are personally and officially bound to administer the Federal constitution as the ''supreme law of the land.'' 1 Wheaton, Hunter vs. Martin; 1 Wh., 340.

Fifth—This proceeding by mandamus is in no sense a suit against the State, but, on the contrary, is authorized by the State to enforce her will, as expressed in the organic law, according to justice and equity.

Sixth—The State is not presumed to have authorized its officer to resist obedience to her behests, based on an iniquitous condition in a statute, which amounts to confiscation, spoliation or repudiation, because she was powerless under her Federal relations to do so if this were attempted.

*J. C Egan*, Attorney General, for the Respondent and Appellee:

First—This Court has no jurisdiction in this case, as the amount involved is under one thousand dollars.

Second—The State Treasurer is prohibited from stamping these bonds by Act No. 121 of 1880, unless the January coupons should be surrendered.

Third—The relator cannot accept one portion of the debt ordinance and reject another.

The opinion of the Court was delivered by

LEVY, J. The relator represents that he is the holder and owner of six bonds of $1000 each issued by the State of Louisiana, under authority of an act of the General Assembly of January 24, 1874, No. 3, payable in 1914, with interest at seven per cent per annum, making $35, due semi-annually, on 1st July and 1st January of each year from 1874; that the payment of principal and interest is provided for by a levy of an annual tax, fixed and guaranteed by an amendment of the Constitution of 1868; that, by an ordinance passed by the Constitutional Convention of 1879, which was submitted to and adopted by the people, relator was entitled to present said bonds to the Treasurer of the State, for the purpose of reducing the interest as set forth therein, and it is made a mere ministerial duty of said Treasurer to stamp thereon the following words, to wit:

State ex rel. Ecuyer, vs. Burke, State Treasurer.

"Interest reduced to two per cent per annum from January 1, 1880, three per cent per annum for fifteen years, and four per cent per annum thereafter."

He alleges that he has presented said bonds and informed him of the acceptance of the terms and conditions in said ordinance, and required him to perform the duties imposed on him by law, which he refuses and neglects to perform, to relator's injury and detriment and without warrant of law. He avers that the duty of said Treasurer is merely ministerial, and the law has lodged with him no discretion in the premises. He further alleges that he has a valid contract with the State, which is protected by the Federal Constitution, Art. 1, Sec. 10, and by the Constitution of the State of Louisiana, Arts. 155 and 110 of 1868, and that no law can be legally passed to impair its obligation. He prays for a mandamus to said State Treasurer, commanding him to perform said duties, and that the said mandamus be made peremptory, after due proceedings had. A provisional writ of mandamus was issued.

The Treasurer answers, that the law authorizing the stamping of the bonds of plaintiff makes it conditional on the bondholder's surrendering his interest-coupons, due January 1st, 1880, and all the coupons falling due subsequently, and denies that relator has offered to surrender these coupons. He alleges that he has no authority to stamp said bonds until said coupons have been delivered up as the law requires. He further alleges that the service required of him by plaintiff is not a ministerial duty, and that the judiciary has no control over the executive and co-ordinate branch of the State government except as regards purely ministerial duties of executive officers. He prays that the peremptory mandamus be refused, etc.

There was judgment of the lower court refusing the peremptory mandamus prayed for, and relator has appealed.

In his brief, defendant suggests that this Court is without jurisdiction as to the appeal, because the amount in dispute is the January coupons on six bonds of $1000 each, amounting to $210. We think this objection is not well taken. In our opinion the amount in dispute is the interest on the bonds of $6000, at the rate of two per cent per annum for five years from January 1st, 1880, three per cent for fifteen years, and four per cent thereafter until the year 1914, making an aggregate sum of $6660.

Relator's right to have the bonds stamped is given by ordinance of the Constitutional Convention of 1879, known as the "Debt Ordinance," which was adopted by the voters of the State. This ordinance, so far as it relates to this case, is as follows:

Art. I. Be it ordained by the people of the State of Louisiana in Convention assembled, That the interest to be paid on the consolidated

bonds of the State of Louisiana, be and is hereby fixed at two per centum per annum for five years, from the first of January, 1880, three per centum per annum for fifteen years, and four per centum per annum thereafter, payable semi-annually.     *     *     *     *     *

Art. 2. The holders of the consolidated bonds may at any time present their bonds to the Treasurer of the State, or to an agent to be appointed by the Governor,—one in the City of New York and the other in the City of London,—and the said Treasurer or agent, as the case may be, shall indorse or stamp thereon the words " interest reduced to two per cent per annum for five years from January 1st, 1880, three per cent per annum for fifteen years, and four per cent per annum thereafter;" *provided*, the holder or holders of said bonds may apply to the Treasurer for an exchange of bonds, as provided in the preceding article.

Art. 3. Be it further ordained, That the coupon of said consolidated bonds falling due the first of. January, 1880, be and the same is hereby remitted, and any interest taxes collected to meet said coupon are hereby transferred to defray the expenses of the State government.

The *proviso* in the second article refers to the right of the holders of consolidated bonds to exchange them for other bonds to be issued at the rate of seventy-five cents on the dollar of bonds held and to be surrendered by such holders as fixed by first article, the said new issue to bear four per cent per annum interest, payable semi-annually.

The terms, conditions and requirements of this ordinance are plain, unmistakable and mandatory. In order to enable the holders of the bonds to avail themselves of the provisions of Art. 2, they " may at any time present their bonds to the Treasurer of the State, and the said Treasurer *shall* indorse or stamp the words " prescribed in the article. The ordinance, which by its adoption by the people, " forms a part of the Constitution " requires this and nothing more. Sec. 6, Act No. 121, of 1880, reads: " That any holder of said consolidated bond or bonds may at any time present his bond or bonds to the State Treasurer, or to either of said bond agents, and the said Treasurer or the said agent to whom presented, as the case may be, shall stamp such consolidated bond with the stamp furnished him by the Governor, after first detaching from said bond the coupon which fell due on the first day of January, 1880. No bond shall be stamped until the said January coupon shall have been surrendered to the Treasurer or agent."

We do not think the Legislature has the right either to enlarge or detract from the plain provisions and enactments of the Constitution. That instrument defines with precision what may be done by the bondholder, and what shall be done by the Treasurer, and, therefore, without a special grant of power, the Legislature can no more impose additional

requirements in the matter, than it can by statute abrogate or repeal, or set at naught the expressed requirements.

The relator has the right to demand and the Treasurer has the duty imposed upon him to comply with the provisions of article two of the ordinance in the manner therein directed; and the requirement of the surrender of the coupon, as a condition precedent to the stamping of the bond, is violative of the Constitution itself, in conflict therewith, and the act 121, therefore, inoperative to that extent.

In his answer, defendant, alleges that, the service required of him by relator is not a ministerial duty, and that the judiciary has no control over the executive and co-ordinate branch of the government except as regards purely ministerial duties of executive officers. As regards the first proposition, we decide that the service required in this case *is* the performance of a purely ministerial duty, and this is too plain to require argument. As to the second proposition, it is elementary; but while fully recognizing the independence and all the rights of the co-ordinate branches of the government, it is only necessary to say that it is the province and duty of the judiciary, whenever the question is properly brought before it in judicial proceedings, to decide whether duties sought to be enforced at the hands of officers, are or are not ministerial, and that it is of the essence of the judiciary to adjudge such questions, as otherwise these officers would themselves by their own decision be judges of their legal and constitutional powers.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered by said court, it is now ordered, adjudged and decreed that the mandamus prayed for be made peremptory and the same is perpetuated; appellee to pay the costs of both courts.