# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 03-944

# ACADIA PARISH POLICE JURY, ET AL

# VERSUS

# TOWN OF DUSON

**************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, DOCKET NO. 75,890
HONORABLE HERMAN CLAUSE, PRESIDING

**************

**SYLVIA R. COOKS**
**JUDGE**
**************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

Andre' Doguet
Attorney at Law
712 The Boulevard
Rayne, Louisiana 70578
(337) 334-1005
COUNSEL FOR APPELLANT:
    Acadia Parish Police Jury

Homer Ed Barousse
Barousse & Craton
P.O. Box 1305
Crowley, Louisiana 70527-1305
(337) 785-1000
COUNSEL FOR APPELLANT:
    Sheriff Kenneth Goss

Katherine M. Whitney
Richard P. Ieyoub, Attorney General
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005
(225) 342-7013
COUNSEL FOR APPELLEE:
        State of Louisiana

Gerald C. deLaunay
Perrin, Landry, deLaunay, Dartez & Ouellet
P.O. Box 53597
Lafayette, Louisiana 70505
COUNSEL FOR APPELLEE:
        Town of Duson

**COOKS, Judge.**

## STATEMENT OF THE CASE

The Acadia Parish Police Jury (Acadia Parish) and the Acadia Parish Sheriff, Ken Goss, filed a Petition for Declaratory Judgment seeking to prohibit the town of Duson from collecting video poker revenues generated by businesses located within the town's municipal boundaries. Acadia Parish and Sheriff Goss contend the Parish is entitled to the video poker revenue derived from video poker machines located in Acadia Parish and also within the municipal limits of the town of Duson. Acadia Parish and Sheriff Goss contend La.R.S. 33:171 is unconstitutional.

## LAW AND DISCUSSION

In 1991, the Louisiana legislature enacted the Video Poker Devices Control Law, which allowed for the operation of video draw poker devices in parishes throughout Louisiana. La.R.S. 27:301, et seq. The distribution of video poker revenues is governed by La.R.S. 27:312, which provides in relevant part:

> (1) Twenty-five percent to be distributed in the following priority:
> . . .
> (b) Second, except as provided by R.S. 33:171(B), the money remaining after the distribution provided for in Subparagraph (1)(a) shall be distributed as follows:
>
> (i) **To the governing authority of municipalities in which video draw poker devices are operated,** the amount of the distribution to be based upon the proportion of the total amount of fees, fines, and penalties the municipality contributes to the statewide total, to be used for enforcement of the provision of this Chapter, offenses relating to gambling, and any other purpose. (Emphasis added.)
>
> (ii) **To the governing authority of each parish in which video draw poker devices are operated and the sheriff of each such parish,** to be divided equally between them, the amount of the distribution to be based upon the proportion of the total amount of fees, fines and penalties the parish contributes, **outside of any incorporated areas,** to the statewide total, to be used for enforcement of the provision of this Chapter, offenses relating to gambling, and any other purpose. (Emphasis added.)

3

This statute provides for video poker revenues to be distributed to the governing authority responsible for the "enforcement of the provision of this Chapter, offenses relating to gambling and any other purpose." The amount received by the governing authority is based upon a "proportion of the total amount of fees, fines, and penalties the municipality contributes to the statewide total. . . ." Under this provision, in the unincorporated areas of the parish, the parish and the sheriff, as the governing authority responsible for oversight of the gambling establishment, receive the revenues for video poker devices. La.R.S. 33:312(C)(1)(b)(ii). However, if the video poker devices are located within a municipality, the municipality receives the revenue and is responsible for oversight and control of the gambling establishment. La.R.S. 33:171(C)(1)(b)(i). Acadia Parish and Sheriff Ken Goss do not challenge the constitutionality of these provisions.

In 1996, the legislature adopted La.R.S. 18:1300.21, which called for a local option election in each parish to determine whether to allow gaming activity in the parish. Acadia Parish voted to allow video poker devices while Lafayette Parish voted to prohibit video poker devices.

In 1999, the legislature adopted La.R.S. 33:171(B) which provides an exception to the distribution scheme provided for in La.R.S. 27:312(C)(1)(b).

La.R.S. 33:171(B) provides, in relevant part:

(B) Notwithstanding the provision of R.S. 27:312, **when the governing authority of a municipality which lies wholly within a parish in which video poker** regulated by the Video Poker Devices Control Law **is prohibited** annexes territory in a parish in which video poker regulated by such law is permitted, no revenues for the Video Draw Poker Devices Fund shall be distributed or appropriated to the annexing municipality. This Subsection shall apply to any annexation by ordinance adopted by a municipality but which has not taken effect on June 9, 1999.

This provision was enacted to prevent a municipality located wholly within a parish that voted to prohibit video poker from changing its eligibility to receive

4

revenue through the annexation of portions of a parish that voted to allow video poker. This provision only applies to municipalities which lie *wholly* within one parish.

The town of Duson straddles the boundary between Lafayette and Acadia Parishes. In the 1980s, the municipal boundaries of Duson were extended into portions of Acadia Parish when residents of the rural areas of Acadia Parish petitioned the town of Duson for annexation for the purpose of receiving municipal services the parish was not providing.

In 1991, when video poker was authorized statewide, businesses in the town of Duson began acquiring video poker devices. After the local option elections in 1996, all video poker devices located in the Lafayette Parish portion of the town ceased operations while video poker devices located in the Acadia Parish portion continued in business. The Four Deuces Truck Stop and Casino and Miss Mamie's Casino, two successful establishments housing video poker machines, are physically located in Acadia Parish near the Interstate-10 interchange with Duson. Miss Mamie's was annexed into the town in 1984, 1991 and 2001. The Four Deuces Truck Stop and Casino was annexed in June 1998. Both businesses petitioned the town for annexation for the purpose of receiving municipal services. Upon annexation into the town of Duson, the revenue generated from video poker was by law diverted into the town coffers. It is the substantial revenue from these establishments that is at issue in this dispute. Currently, video poker revenues make up nearly half of the revenues received by the town of Duson. This money is used to provide municipal services such as fire and police protection, water and sewage services, road maintenance and to assist in economic development.

*Constitutionality of La.R.S. 33:171(B)*

Acadia Parish and Sheriff Goss do not challenge the constitutionality of La.R.S. 27:312, which provides for the method of distribution of video proceeds.

5

Initially, we note it is undisputed that the municipal boundaries of the town of Duson are and have been located in both Lafayette and Acadia Parishes. Because Duson does not lie "wholly within a parish in which video poker. . . is prohibited," the prohibition contained in La.R.S. 33:171(B) is not applicable to the town of Duson. Acadia Parish and Sheriff Goss contend this statute creates a classification prohibited by Article VI, Section 3 of the Constitution of 1974, which provides:

> The legislature may classify parishes or municipalities according to the population or on any reasonable basis related to the purposes of the classification. Legislation may be limited in its effect to any such class or classes.

Acadia Parish and Sheriff Goss contend there is no rationale basis for distinguishing between municipalities located wholly within the physical boundaries of one parish and those municipalities whose physical boundaries encompass more than one parish. This distinction, petitioners contend, defeats the legislative purpose behind La.R.S. 33:171(B), which was to protect the integrity of the local option vote in each parish and prevent a municipality located wholly within a parish that voted to prohibit video poker from changing its eligibility to receive revenue through the annexation of portions of a parish that voted to allow video poker. Petitioners assert Duson should not be allowed to benefit from the revenue generated by Miss Mamie's and Four Deuces. However, as petitioners point out, although these businesses were annexed (partially or completely) prior to the effective date of the statute, neither location applied for its video poker gaming licence until after the effective date of the statute. Miss Mamie's submitted its application on June 23, 1999 and Four Deuce's submitted its application on March 1, 2002. In other words, at the time of the annexation, video poker revenues were not being generated by either business. The annexations were requested by the owners and approved by the town for the purpose of receiving municipal services. Only after annexation did a windfall of revenue from

6

video poker benefit the town of Duson. Additionally, the town of Duson encompassed portions of Acadia Parish prior to the legalization of video poker by the state legislature.

Petitioners also contend La.R.S. 33:171(B) creates an unconstitutional temporal classification by limiting its application to only those annexations not completed as of the effective date of the new law. Petitioners contend there is no rational basis for treating municipalities differently based upon when annexations occur.

We find petitioners' arguments without merit. On its face, La.R.S. 33:171(B) does not apply to the town of Duson. Duson is not located "wholly within a parish in which video poker. . . is prohibited." Duson is partially located in Acadia Parish, and has been since the 1980's, long before video poker was authorized by the legislature. Acadia Parish voted to approve video poker. The state legislature is charged with the regulation of gaming. La.R.S. 27:2; *Polk v. Edwards*, 626 So.2d 1128, 1137 (La.1993); *City of Donaldsonville v. State of Louisiana*, 99-1582 (La.App. 1 Cir. 6/23/00); 764 So.2d 339. "Louisiana courts have consistently recognized that the legislature's authority to regulate gaming constitutes a legitimate exercise of police power." *Polk*, 626 So.2d at 1137; *City of Donaldsonville*, 764 So.2d at 344. We find La.R.S. 33:171(B) is clear and unambiguous and does not create any unreasonable classifications. It also is a legitimate exercise of its constitutional power for the legislature to except municipalities such as Duson, which are located in two parishes, from the prohibition contained in La.R.S. 33:171(B). See La.Const.art. VI,§ 3 (1974). Accordingly, we affirm the decision of the trial court dismissing petitioners' suit.

**DECREE**

Based on the foregoing review of the evidence, we affirm the decision of the trial court dismissing the petitioners' suit. All costs of this appeal are charged to Acadia Parish Police Jury and Sheriff Ken Goss.

7

**AFFIRMED.**